# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ANDREA BIEN, | ) |
| | ) |
| Plaintiff, | ) CASE NO. 14-CV-00366 |
| | ) |
| v. | ) |
| | ) |
| STELLAR RECOVERY, INC., | ) |
| J. DOE #1 and J. DOE #2, | ) |
| | ) |
| Defendants. | ) |

## STELLAR RECOVERY, INC.'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

COMES NOW Defendant Stellar Recovery, Inc. ("Defendant" or "Stellar"), by and through counsel, and hereby submits its Responses to Plaintiff's First Set of Interrogatories pursuant to Rule 33 as follows:

## GENERAL OBJECTIONS

1. Defendant's General Objections apply to every portion of Plaintiff's Rule 33 Interrogatories. Defendant's General Objections are incorporated into every response to the individual discovery requests set forth below, even though they will not be restated in the individual responses. The fact that Defendant has provided information in response to a discovery request is not a waiver of any objection made to the discovery request.

2. Defendant's objections and responses to Plaintiff's Rule 33 Interrogatories are made without in any way waiving or intending to waive, but on the contrary, intending to preserve and preserving:

    a. All questions as to competency, relevancy, materiality, privilege (including but not limited to the attorney-client privilege and attorney work product doctrine), and

admissibility as evidence for any purpose of the responses or subject matter thereof, in any subsequent proceeding in or the arbitration of this or any other action;

b. The right to object on any ground to the use of said responses or the subject matter thereof, in any subsequent proceeding and in the arbitration of this or any other action;

c. The right to object on any ground at any time to other requests for admissions, interrogatories, document requests, or other discovery procedures involving or relating to the subject of these responses.

3. Defendant's investigation into this matter is continuing. These answers are based on and, therefore, necessarily limited by, the records and information still in existence, presently recollected, and thus far discovered in the course of preparing these responses. Consequently, Defendant reserves the right to make any changes in these responses if it appears at any time that omissions or errors have been made or that more accurate information is available.

4. Defendant objects to each and every Interrogatory to the extent it seeks documents or other materials or information protected from disclosure by the attorney-client privilege and/or the work-product doctrine.

5. Defendant objects to each and every Interrogatory to the extent it seeks to impose requirements beyond those set forth under the Federal Rules of Civil Procedure and applicable case law.

6. Defendant objects to each and every Interrogatory to the extent it seeks confidential or proprietary information.

7. Defendant objects to each and every Interrogatory to the extent that it calls for

34491514v1 0961610

information which is not within the possession, custody, or control of Defendant.

8. Defendant objects to each and every Interrogatory to the extent that it is vague, overly broad, unduly burdensome, harassing, not relevant or not reasonably calculated to lead to the discovery of admissible evidence.

9. Defendant objects to each and every Interrogatory to the extent that it calls for information that may be derived or ascertained from records which are in the possession of Plaintiff, or that have been previously identified or produced to Plaintiff, as the burden of deriving or ascertaining the information is substantially the same for Plaintiff as for Defendant.

10. Defendant objects to the Definitions and Instructions to the extent they seek to impose requirements beyond those set forth under the Federal Rules of Civil Procedure governing this action and applicable case law.

11. Without waiving any of its general objections, which are applicable to all of the Interrogatories, Defendant has set forth responses to these Interrogatories to the extent that:

   a. Information is presently known and available as a result of reasonable search and inquiry by Defendant;

   b. Information is not subject to the attorney-client privilege or the attorney work-product doctrine; and

   c. Defendant has not further objected to a particular Interrogatory.

## INTERROGATORY NO. 1.

Identify the natural person answering these interrogatories.

## ANSWER:

Robert Peterson, Chief Compliance Officer of Stellar Recovery, Inc., 1327 Highway 2 West, Suite 100, Kalispell, MT 59901, with assistance of counsel.

34491514v1 0961610

## INTERROGATORY NO. 2.

Identify anyone, other than legal counsel, you consulted in any manner regarding these Interrogatories.

## ANSWER:

Kendra Stokes, Dialer Manager of Stellar Recovery, Inc., 4500 Salisbury Rd, Ste. 105, Jacksonville, FL 32216.

## INTERROGATORY NO. 3.

Identify each documents, computer system and electronic record you consulted in any manner regarding these Interrogatories.

## ANSWER:

Account notes for the account Stellar was attempting to collect from Plaintiff.

Email system through Microsoft

Livevox log of calls to Plaintiff's phone number.

## INTERROGATORY NO. 4.

Identify every one of your agents and/or employees who made any effort to collect the Debt from the Plaintiff, including but not limited to:

    a.    the Persons who placed calls to Plaintiff;

    b.    the Persons who decided when, how and how frequently to place calls to the Plaintiff;

    c.    the Persons who sent letters to the Plaintiffs;

    d.    the Persons who decided when, how and how frequently to send letters to the Plaintiff;

    e.    the Persons who decided to cause the Plaintiff's caller-ID to display a 401 area code when she was called;

    f.    the Persons who placed calls to people other than the Plaintiff while attempting to collect the Debt; and

    g.    the Persons who decided when, how and how often to place calls to people other than the Plaintiff while attempting to collect the Debt.

## ANSWER:

a. None, the calls to Plaintiff were placed through Livevox.

b. Stellar has general policies regarding the frequency of calls made to a specific phone number on an account, which are programmed into the calling system. These policies were created by the Operations and Compliance Department, which currently includes Bob Peterson, Garrett Schanck, and Rachel Frady. Stellar cannot state with certainty who personally determined this policy.

c. None, no letters were sent to Plaintiff.

d. Not applicable.

e. Livevox provides the phone numbers in the 401 area code, and when calls are placed into Rhode Island a phone number that rings to Stellar Recovery with the 401 area code is transmitted. This is an option that was included in Stellar's contract with Livevox.

f. No other person was called regarding the debt that was believed to belong to Plaintiff. Other phone numbers, aside from Plaintiff's home number, were dialed through Livevox.

g. See response to sub-question b, above.

## INTERROGATORY NO. 5.

Describe in detail all of your efforts to collect the Debt from the Plaintiff.

## ANSWER:

Stellar placed phone calls to various phone numbers associated with Plaintiff's account, including the two calls to Plaintiff's home phone number, 401-453-1743, on January 8 and January 9, 2014. Stellar never spoke with anyone about the account.

## INTERROGATORY NO. 6.

In the form of a chronology, for each call you placed attempting to collect the Debt from the Plaintiff, state:

a. The number to which the call was placed;

b. The date and time the call was initiated;

c. The street address, city and state from which the call was initiated;

d. The telephone line which the call was placed using;

e. All the caller-Id information that was transmitted with the call;

34491514v1 0961610

  f.  The reason you decided to display that caller-Id information and not other caller-Id information;

  g.  The street address, city and state of your agents or employees who you expected would be able to speak with the Plaintiff if she had answered the call'

  h.  The computer software that was used to place the call;

  i.  Whether or not the call was answered by a human; and

  j.  The contents of any message that was left, and/or any conversation that took place, as a result of the call being placed.

## ANSWER:

Stellar objects to this Interrogatory as irrelevant, overbroad, burdensome, and not reasonably tailored to the allegations in this matter, which include only the two phone calls to Plaintiff's home phone number and whether Stellar contacted her after being contacted by Plaintiff's attorney Joanne Faulkner.

Subject to and without waiving the above objections, Stellar will respond to the above request regarding the phone calls placed to Plaintiff's home phone number:

  a.  401-453-1743

  b.  January 8, 2014 at 12:01 pm EST
     January 9, 2014 at 1:07 pm EST

  c.  There is no location from which these calls were initiated. They originated from Livevox's data center, which is located at 111 8th Avenue, New York, NY, 10011. However, the calls are then launched, using Livevox's proprietary software.

  d.  The calls were made through a voice over internet protocol. There is no telephone line.

  e.  Stellar has no control over this and no specific information regarding what was sent. On information and belief, just the phone number listed in response d was sent.

  f.  All calls to Rhode Island go out from either toll free or 401 area code phone numbers, to provide consumers with a local or toll free phone number to call back.

  g.  If Plaintiff had answered either phone call, it would have been transferred to the first available collector in either the Kalispell, Montana or Jacksonville, Florida locations.

  h.  Livevox

  i.  No, none of the calls were answered by a human.

34491514v1 0961610

j. No conversations took place on either call. Stellar objects to this request because Plaintiff has equal access to this information as the messages were left on Plaintiff's voice mail.

Subject to and without waiving the above objection, on information and belief the message left on Plaintiff's voice mail on January 8 and January 9, 2014 was

This message is for Andea Bien. If you are not Andrea Bien, please hang up or disconnect. If you are Andrea Bien, please continue to listen to this message. There will now be a three second pause in this message. By continuing to listen to this message, you acknowledge that you are Andrea Bien. You should not listen to this message so that other people can hear it as it contains personal and private information. There will now be a three second pause in this message to allow you to listen to it in private. This is (name of collector) at Stellar Recovery. This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purposes. Please contact me about an important business matter at (phone number).

## INTERROGATORY NO. 7.

Describe in detail the means by which you caused the Plaintiff's caller-Id to display the telephone numbers it displayed when you called her.

## ANSWER:

Stellar objects to this request because it seeks information which Stellar would not have because it has no power or control over the telephone carrier that provides caller-ID information to Plaintiff's phone, nor any knowledge regarding how numbers are sent to telephone carriers to provide information on a caller-ID. Furthermore, Stellar has no control or authority over Plaintiff's phone service provider and what information that phone provider chooses to include in any Caller ID display.

Subject to and without waiting that objection, upon information in belief, Stellar is assigned certain phone numbers through its contract with Livevox and when Livevox makes a call on behalf of Stellar, Livevox sends the information for one of those Livevox phone numbers assigned to Stellar to the recipient of the call.

## INTERROGATORY NO. 8.

Describe in detail your policies and procedures for deciding which phone numbers, and what other information, to cause to be displayed on the caller Id's of the phones of people you called while attempting to collect consumer debts during the Relevant Period.

## ANSWER:

There are no policies and procedures about this.

## INTERROGATORY NO. 9.

Describe in detail why you decided to use software, technology or phone lines, while attempting to collect alleged debts from consumers, at any time during the Relevant Period, to display an area other than the area code for the location from which the calls was initiated and/or other than the area code for the location in which you had a physical office and/or employee working. If you relied on any sales material, studies, research, effectiveness reports, evaluations, comparisons or similar research or records, identify them with sufficient detail to enable the Plaintiff to describe them in a subpoena them and identify who presently has custody or control of them. (Alternately, you may provide copies of them.)

**ANSWER:**

Stellar objects to this Interrogatory because it seeks information that is proprietary and confidential, as it regards internal business decisions made by Stellar.

Subject to and without waiving these objections, Stellar states that this was an option offered by Livevox that Stellar chose to accept. At this time, Stellar is not aware of any materials provided or relied upon prior to accepting this option.

**INTERROGATORY NO. 10.**

Describe with particularity all the training that you provided to, arranged for, suggested to, or required of, the Persons identified in these Interrogatories regarding compliance with laws and regulations regarding debt collection activities, including but not limited to:

a. The topics, content, timing, and duration of the training;

b. All documents and audio or visual materials used in the training; and

c. Each Person involved in providing the training.

**ANSWER:**

Because no person was directly involved in the attempts to contact Plaintiff, the answer to this Interrogatory is none. Subject to that caveat, Stellar states that it has a comprehensive training program in place for all employees involved in collections:

Stellar provides all employees with training materials, which instruct employees on compliance with collection laws including the FDCPA. Stellar also provides every employee with an Employee Handbook which sets forth policies and procedures designed to avoid any violations, including the type of conduct alleged by Plaintiff in this case. The policies and procedures set forth in the Employee Handbook include an outline of employees' obligation to comply with collection laws, including the FDCPA. The handbook further states that Stellar will investigate any Complaints made against its employees and take corrective action when warranted, outlines rules for professional conduct including adherence to Federal, State, & local laws, prohibits the use of false/misleading information when communicating with a consumer, details the case-by-case nature of disciplinary determinations, and sets forth the requirement for ongoing training.

34491514v1 0961610

Stellar also provides its employees with a Blue Book setting forth its policies and procedures, including specific instruction concerning state/federal collection laws.

Stellar also performs constant monitoring and review of its employees' performance and adherence to collection laws. Reviews of Employees include Monthly reviews, Mini File Reviews, Call Monitoring Reviews, Reprimands, and Action Plans to ensure compliance with collection laws and constant monitoring thereof. In addition, employees are subject to call monitoring reviews and scorecards, constant tracking of their conduct, performance, and compliance, end of month reviews, full file reviews, and mini file reviews. Intermittently, Stellar will also provide its employees with information regarding present developments in the area of collection law, including tactics often used by consumers and their attorneys to elicit violations of collection laws.

In addition, employee files generally contain acknowledgements of statutory compliance training, acknowledgements of receipt and review of Stellar's Confidential Employee Handbook and Confidential Blue Book, acknowledgements of Compliance with federal collection laws, exams testing their knowledge of those laws, acknowledgement of State Law Exam requirements, exams testing knowledge of state collection laws, including Michigan, acknowledgement of legal and moral collection tactics, call script exams, acknowledgement of *Foti* compliance, and action plans directing Compliance with collection laws.

Stellar investigates all Complaints against any Stellar employee. Any employee named in a consumer complaint is subject to corrective action up to and including termination of employment. Any employee who witnesses a fellow employee violating any collection law is required to immediately report the incident to management. Concerning licensing, and by way of prevention, any employee who is unable to or fails to meet state specific licensing requirements will be transferred to a different Stellar department or released from their position. Stellar also provides its employees with a non-all-inclusive list of prohibited practices, engagement in any one of which results in corrective action, up to and including termination and possible legal action.

Stellar provides each employee with a collection law study guide, a chart providing state-by-state laws and limitations, a guide setting forth the proper method for handling consumer disputes, a study guide setting forth and explaining specific procedures for handling accounts, scripts providing recommended responses to common questions asked by the consumer, and a detailed guide listing the different types of account status and procedures for proper handling of each type of status. Stellar also generally provides its employees with classroom collection training, conducts daily audits and quality assurance reviews of recordings with its employees, and conducts weekly mini-reviews and monthly complete reviews to reinforce training and assure continued adherence to proper collection procedures. Stellar also performs constant monitoring of state and federal laws applicable to collection, and conducts quarterly testing of its employees to ensure adherence to those laws.

Stellar's training initially consists of detailed collection training using an employee handbook and the knowledge/memory of the experienced instructors. The training focuses on proper collection methods and adherence to state and federal collection and telecommunications laws. This initial training takes place during regular business hours over the course of between 1 and 2 weeks. Further training and continuing education is administered constantly throughout the course of employment, including supplemental training on proper collection methods; adherence to state and federal collection and telecommunications laws; review of employees phone calls and handling of accounts; and testing to ensure knowledge and compliance. ACA

documents and updates available on the ACA website are frequently used for ongoing training after initial class room training. Stellar has a monthly meeting where it discusses at least one current compliance issue with its employees. Stellar also conducts FDCPA, FCRA, TCPA and State Specific testing on a regular basis, and no less than once every 6 months. Also, certain clients have testing in place for collectors that handle their accounts and files. Stellar also does personality training that identifies 4 different personality types, to determine what personalities the collectors possess and how they can identify and relate to the other types of personalities, which training is ongoing.

### INTERROGATORY NO. 11.

Describe with particularity any disciplinary actions you have ever taken against or involving the Persons identified in response to these Interrogatories.

### ANSWER:

Not applicable.

### INTERROGATORY NO. 12.

Identify and describe fully any and all computer programs you used to attempt to collect the Debt from the Plaintiff, including programs used to place phone calls to her, and including, but not limited to, the brand name and version of each program and the name and address of the vendors and/or suppliers who provided each to you.

### ANSWER:

The two calls placed to Plaintiff were made through LiveVox, Inc., 450 Sansome Street, Suite 900 San Francisco, CA, 94111; (415) 671-6000.

### INTERROGATORY NO. 13.

If you did not record the telephone calls to the Plaintiff, explain in detail why you did not.

### ANSWER:

No calls to Plaintiff were recorded because the calls were not answered. Stellar does not record calls when a message is left through Livevox.

### INTERROGATORY NO. 14.

Describe with particularity any bonus, incentive, reward and/or performance pay, benefit or other compensation, beyond base pay, that you made available to any of the Persons identified in these Interrogatories that was in any way tied to their collection activities or performance collecting debts, or to the collection activities or performance collecting debts of the people they supervised, during the Relevant Period.

34491514v1 0961610

**ANSWER:**

Not applicable.

## INTERROGATORY NO. 15.

Identify anyone, not already identified in response to these Interrogatories, who you believe may have knowledge of facts and circumstances relevant to this litigation.

**ANSWER:**

Plaintiff, Plaintiff's husband, and Joanne Faulkner.

## INTERROGATORY NO. 16.

Identify all the witnesses you intend to call at the trial of this matter and provide a detailed summary of the expected testimony of each.

**ANSWER:**

Stellar has not yet determined who it will call as a witness at trial. Stellar will provide that information when required by the scheduling order.

## INTERROGATORY NO. 17.

Identify and describe specifically all exhibits you intend to introduce at the trial of this matter.

**ANSWER:**

Stellar has not yet determined what exhibits it will introduce at trial. Stellar will provide that information when required by the scheduling order.

## INTERROGATORY NO. 18.

Identify the Person(s) who provided you with outgoing telephone service that was used to place and/or carry calls to collect consumer debts during the Relevant Period.

**ANSWER:**

Stellar objects to this Interrogatory because it seeks information that is irrelevant, overbroad, and not reasonably tailored to the allegations in this lawsuit. Stellar additionally objects because this is not information that is in Stellar's possession custody or control because the calls are made through Livevox.

Subject to and without waiving the above objections, Stellar states that its understanding is that Livevox has contracts with multiple different phone carriers, and the Livevox software determines who to send the calls through at that specific moment.

34491514v1 0961610